IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| TRINA YOLONDA CONGRESS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ALEXANDRIA CITY PUBLIC SCHOOLS | ) ) ) | |
| & | ) ) | |
| DR. MELANIE KAY-WYATT | ) ) | Case No. 1:25-cv-01880 (MSN/IDD) |
| & | ) ) | |
| KAMIKA VALMOND | ) ) ) | |
| & | ) ) | |
| JEANETTE VINSON | ) ) ) | |
| & | ) ) | |
| HEATHER ORENSTEIN, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Laurie L. Kirkland, VSB No. 75320
Dana R. Leinbach, VSB No. 95866
BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)
*Counsel for Defendants Alexandria School Board,
Dr. Melanie Kay-Wyatt, Kamika Valmond,
Jeanette Vinson, and Heather Orenstein*

Date: December 31, 2025

# **Table of Contents**

Preliminary Statement ................................................................................................................... 1

Facts, as Alleged in the Complaint ............................................................................................... 2

Argument ....................................................................................................................................... 3

    I. "Alexandria City Public Schools" Is Neither an Employer nor a Sui Juris Entity Against Which Relief May Be Granted ............................................................................. 3

    II. This Court Lacks Subject Matter Jurisdiction Over Ms. Congress's Claims under Title VII ................................................................................................................................ 3

    III. Individual Defendants Cannot Be Liable in Their Individual Capacity under Title VII, the ADA, and the FMLA ............................................................................................ 4

        A. Title VII and the ADA Do Not Impose Individual Liability ............................................ 4

        B. The FMLA Does Not Permit Claims Against Individual Employees of the School Board ................................................................................................................... 5

        C. Ms. Congress Fails to Allege Any Actionable Conduct by the Individual Defendants. . 6

    IV. In the Alternative, Ms. Congress Fails to State Any Claim upon which Relief May Be Granted ........................................................................................................................... 6

        A. Ms. Congress Has Not Alleged Facts to Support a Claim of Retaliation under Title VII (Part of Count I) ................................................................................................. 6

        B. Ms. Congress Fails to Allege Facts to Support a Claim of Discrimination under the ADA (Count II) ............................................................................................................ 8

            1. Ms. Congress Fails to Allege She is a Qualified Individual with a Disability, and Thus States No Claim under the ADA ................................................................ 8

            2. Ms. Congress Fails to Allege Any Facts Showing That the Non-Renewal Occurred Because of a Disability ............................................................................. 9

            3. Ms. Congress Fails to State Any Claim of a Failure to Accommodate Any Disability .................................................................................................................. 10

        C. Ms. Congress Fails to Plead a Constructive Discharge Claim (Count III) .................... 11

Conclusion .................................................................................................................................. 13

**Preliminary Statement**

Plaintiff Trina Yolonda Congress ("Ms. Congress") has filed a Complaint against the Alexandria County Public Schools, which are operated by the Alexandria City School Board ("ACPS"), as well as against Superintendent of Schools, Dr. Melanie Kay-Wyatt ("Dr. Kay-Wyatt"), Executive Director of Human Resources, Kamika Valmond ("Ms. Valmond"), Principal at George Washington Middle School, Jeanette Vinson ("Ms. Vinson"), and former Human Resources Specialist, Heather Orenstein ("Ms. Orenstein") (collectively, "Individual Defendants"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family Medical Leave Act ("FMLA"), discrimination in violation of the Americans with Disabilities Act ("ADA"), and constructive discharge.

As set forth fully below, the Complaint[1] fails as a matter of law. First, ACPS is not a legal entity capable of being sued, and any claims against it must be dismissed. Second, Ms. Congress has not exhausted administrative remedies with respect to her Title VII retaliation claim, depriving this Court of subject matter jurisdiction. Third, the Individual Defendants cannot be held personally liable under Title VII, the ADA, or the FMLA, and the Complaint contains no allegations that they engaged in any actionable conduct otherwise. Fourth, even if the Complaint were construed as asserting claims against the proper entity, the Alexandria City School Board ("the School Board") which employed Ms. Congress, Ms. Congress still has failed to allege facts sufficient to support any claim under the ADA or Title VII, including disability discrimination, failure-to-accommodate, or Title VII retaliation. Finally, the Complaint purports to assert a claim for "constructive discharge," but such a claim is not an independent cause of

---

[1] Ms. Congress completed the Court's form complaint and she also attached to the form a five-page document titled, "Complaint for Employment Discrimination, Retaliation, and Constructive Discharge," (Dkt. 1-2), which Defendants have construed together as the operative complaint.

action, only a theory of liability under an applicable statute, none of which is identified or properly alleged here. Accordingly, Defendants request that the Complaint be dismissed.

### Facts, as Alleged in the Complaint[2]

Ms. Congress was employed (by the School Board) as a Special Education Teacher at George Washington Middle School, a school within the Alexandria City Public School system, during the 2022–2023 and 2023–2024 school years, serving as a co-teacher, case manager, and advisory teacher. (Compl. ¶¶ 5, 7.) During her employment, Ms. Congress received positive feedback regarding her performance, including written praise from Superintendent Dr. Kay-Wyatt and Ms. Valmond. (Compl. ¶¶ 9–11, 31.)

Beginning in late 2023, Ms. Congress experienced health issues and sought medical treatment. (Id. ¶¶ 17–18.) In April 2024, Ms. Congress's medical provider recommended medical leave, and ACPS approved short-term disability and family medical leave through May 2024. (Id. ¶ 19.) On May 20, 2024, Ms. Congress received written confirmation of approval of short-term disability benefits. (Id. ¶ 20.) Later that same day, ACPS Human Resources notified Ms. Congress that her contract would not be renewed and allegedly suggested that she resign. (Id. ¶ 21.) At that time, Ms. Congress remained on approved family medical leave. (Id. ¶ 22.)

Ms. Congress alleges that ACPS raised concerns regarding her conduct and performance in a complaint after she filed a grievance. (Id. ¶¶ 24–25.) Though Ms. Congress does not include the substance of this complaint, nor does she indicate if any of the numerous pages attached to the Complaint include this complaint, she disputes its accuracy. (Id.)[3]

---

[2] While the School Board disputes may of the facts alleged by Ms. Congress and believes her facts to be incomplete, it accepts them as true, as it must, solely for the purposes of this Motion.

[3] The Complaint also includes allegations concerning matters such as union activity, alleged whistleblowing, property loss, and workplace disputes that are unrelated and not relevant to the elements of the Title VII, ADA, or FMLA claims asserted and therefore are not recited here.

**Argument**

I.  **"Alexandria City Public Schools" Is Neither an Employer nor a Sui Juris Entity Against Which Relief May Be Granted.**

As a preliminary matter, "Alexandria City Public Schools," is not an employer, nor a legal entity against which civil relief may be granted or enforced. The Virginia Code vests the governance of each school division in a School Board, and grants the School Board, not the public schools, the authority to employ personnel and to sue and be sued. *Cross v. Suffolk Cty. Sch. Bd.*, 2011 WL 2838180,*4 (E.D. Va. July 14, 2011) (holding the public schools (as opposed to the School Board itself) was not an employer under the ADEA) (citing Va. Code § 22.1-71 (providing that the school board "is declared a body corporate . . . and may sue and be sued, contract and be contracted with")); *see also M.S. v. Fairfax County Sch. Bd.*, 2006 WL 721372, *3 (E.D. Va. 2006) (dismissing as a defendant the "Fairfax County Public Schools" on the ground that, because it is not an entity that can sue and be sued, no civil action may lie against it); *Augustine v. Winchester Public School District*, 2013 WL 5347465, at *5 (W.D. Va. Sept. 17, 2013) (same). Thus, any claim against the Alexandria Public Schools should be dismissed.

II.  **This Court Lacks Subject Matter Jurisdiction Over Ms. Congress's Claims under Title VII.**

To the extent Count I and/or Count III of the Complaint is based on any alleged violation of Title VII, this Court lacks subject matter jurisdiction over any such claims. (*See* Compl. ¶ 33.) Before a plaintiff may file a lawsuit, Title VII requires that the plaintiff file an employment discrimination complaint with the EEOC. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing 29 U.S.C. § 626(d)); *see also Earl v. Norfolk State Univ.*, Civ. No. 2:13-cv-148, 2014 WL 2916718, at *10 (E.D. Va. June 26, 2014). "The purposes underlying the administrative charge requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more efficient adjudication and decision, and giving the EEOC and the employer an

3

opportunity to resolve the dispute." *Earl*, 2014 WL 2916718 at *10. For these reasons, "a federal court may only consider those allegations included in the EEOC charge." *Id*. If a plaintiff has failed to exhaust her administrative remedies by not including a claim within her charge, the plaintiff's failure to exhaust "deprives the federal courts of subject matter jurisdiction over the claim" and requires dismissal of that claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Jones*, 551 F.3d at 300-01.

In this case, Ms. Congress's charge complained only of discrimination on the basis of disability in violation of the ADA – not any retaliation for engaging in activities protected by Title VII, as she now claims for the first time in her Complaint. (*See* Ex. A; Compl. ¶ 33.) Where, as here, a complaint contains claims for which administrative remedies have not been exhausted, such claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Edwards*, 760 F. Supp. 2d at 618.

### III.  Individual Defendants Cannot Be Liable in Their Individual Capacity under Title VII, the ADA, and the FMLA.

Furthermore, although Ms. Congress names and has purported to serve Dr. Melanie Kay-Wyatt, Kamika Valmond, Jeannette Vinson, and Heather Orenstein (collectively, the "Individual Defendants"), the statutes that she invokes in her Complaint against them—Title VII, the ADA, and the FMLA—do not impose liability on an individual of their positions.

#### A.  Title VII and the ADA Do Not Impose Individual Liability.

Title VII and the ADA authorize claims only against employers or entities receiving federal funding, not against supervisors or colleagues in their personal capacities. *See* 42 U.S.C. § 2000d; 42 U.S.C. § 2000e-2(a); 29 U.S.C. § 623(a); and 42 U.S.C. §§ 12111(2), (5). Given the language of each statute, courts in this Circuit consistently have held that individuals cannot be held personally liable under these federal anti-discrimination laws. *See e.g., Lissau v. Southern Food Serv.*, 159 F.3d 177, 180 (4th Cir. 1998) (supervisor cannot be held liable under Title VII);

4

*Butler v. Va. DOT*, 2024 U.S. Dist. LEXIS 218958, *11 (E.D. Va. Dec. 3, 2024) (individuals are not liable for violations of the ADA as the term "covered entity" means the employer, not an individual). Accordingly, any claims purportedly asserted the Individual Defendants pursuant to Title VII and the ADA should be dismissed as a matter of law.

### B. The FMLA Does Not Permit Claims Against Individual Employees of the School Board.

The FMLA generally defines "employer" broadly to include any person who acts, directly or indirectly, in the interest of an employer. 29 U.S.C. § 2611(4). However, for employees of local educational agencies, Congress narrowed the definition in 29 U.S.C. § 2618. That provision, which addresses special rules concerning employees of local educational agencies such as Ms. Congress, defines "employer" as an "agency or school" and contains no provision for individual liability. 29 U.S.C. § 2618(a)(2)(B).

Consistent with this narrower statutory framework, courts have held that a plaintiff cannot bring an FMLA claim against an individual school board employee. *See Hall v. Grant County Bd. Of Educ. & Marsha Carr-Lambert*, 2008 U.S. Dist. LEXIS 141413 ( N.D. W. Va. 2008); *Lombardi v. Board of Trustees Hinsdale School District 86*, 463 F. Supp. 2d 867 (N.D. Ill. 2006); *Cf. Ainsworth v. Loudon County School Board*, 851 F. Supp. 2d 963, 972-74 (E.D. Va. 2012) (analyzing individual liability of public employees under the FMLA without applying the local educational agency-specific provision of § 2618).

The Supreme Court has made clear that specific statutory language controls over more general language when there is a conflict. *See Clifford F. MacEvoy Co. v. U.S.*, 322 U.S. 102, 107 (1944) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the same or another statute which otherwise might be controlling.") (internal quotation marks omitted). Consequently, applying these authorities, Ms. Congress may

5

pursue her FMLA claims only against the School Board. Any claims against individual employees of the School Board are barred and should be dismissed.

### C. Ms. Congress Fails to Allege Any Actionable Conduct by the Individual Defendants.

Finally, even if the statutes invoked by Ms. Congress could somehow support claims against individuals—though they do not—her Complaint fails to allege any facts showing that the Individual Defendants engaged in any wrongdoing. The Complaint does not include any specific allegations of any conduct, let alone misconduct, by Ms. Orenstein or Ms. Vinson. As to Dr. Kay-Wyatt and Ms. Vinson, the Complaint acknowledges that they praised her and apologized for any perceived mistreatment, without any suggestion that these actions violated Title VII, the ADA or the FMLA. Indeed, there are no allegations that any of the Individual Defendants personally engaged in discriminatory or retaliatory conduct. Because the Complaint does not identify any actionable conduct by these individuals, any claims against them fail as a matter of law and should be dismissed. *See Ashcroft v. Iqbal*, 566 U.S. 662, 683 (2009) (holding complaint did not meet pleading standards where it did not contain any factual allegations that defendant themselves took action); *Evan v. Chalmers*, 703 F.3d 636, 662 (4th Cir. 2012) (holding complaint insufficient where it lacked "any actual indications of individual malfeasance that would justify the personal burdens that litigation can impose.")

### IV. In the Alternative, Ms. Congress Fails to State Any Claim upon which Relief May Be Granted.

### A. Ms. Congress Has Not Alleged Facts to Support a Claim of Retaliation under Title VII (Part of Count I).

In Count I, Ms. Congress alleges, *inter alia*, retaliation under Title VII. To allege a prima facie case of retaliation under Title VII, Ms. Congress must allege that she (1) engaged in a protected activity, (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the action and the protected activity. *EEOC v. Navy Fed.*

6

*Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005). As set forth below, however, Ms. Congress's Complaint is devoid of any factual basis to support the requisite first element that she engaged in activity that was protected by Title VII.

In Count I, Ms. Congress claims that she suffered retaliation "for engaging in protected activities, including filing grievances, union participation, and taking protected medical leave, in violation of Title VII and the FMLA."[4] (Compl. at ¶ 33.) It is well-settled that "Title VII is not a general bad acts statute," and, therefore, it does not prohibit retaliation "based on opposition to discriminatory practices that are outside the scope of Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011); *see also* 42 U.S.C. § 2000e-3 (rendering it unlawful to retaliate against an employee for opposing any practice made unlawful *by this subchapter* or for making a charge *under this subchapter*). Accordingly, "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class, or providing facts sufficient to create that inference, is insufficient." *Ghebreab v. Inova Health System*, 2017 WL 1520427, *8 (E.D. Va. Apr. 26, 2017) (quoting *Young v. HP Enterprise Servs., LLC*, 2011 WL 3901881, *5 (E.D. Va. Sept. 6, 2011)) (dismissing retaliation claim where plaintiff complained in general terms of "discrimination" or "unfair treatment" without any reference to a characteristic protected by Title VII).

With respect to the protected activity for which Ms. Congress appears to claim retaliation under Title VII, Ms. Congress's refers generally to grievances, union participation, and taking medical leave, none of which is protected under Title VII. Ms. Congress does not identify any complaints that she made concerning discrimination based on race, color, religion, sex, or

---

[4] With respect to any claim under the FMLA, Ms. Congress' reference to retaliation for taking protected medical leave may state a claim upon which relief may be granted, at least at this stage of the litigation; however, for the reasons discussed in Sections I and III above, Ms. Congress has not asserted this claim against any proper party in her current Complaint.

7

national origin, nor does she allege that any action taken against her was connected to opposition to unlawful discrimination on these bases. General allegations that she "filed grievances" or engaged in union activity do not suffice to establish that she engaged in activity protected by Title VII. Similarly, taking medical leave, without any link to opposing discrimination based on a protected characteristic, cannot form the basis of a Title VII retaliation claim.

Because Ms. Congress has not alleged any activity protected by Title VII, she cannot establish the first element of a retaliation claim. Without this threshold showing, any retaliation claim under Title VII included in Count I fails as a matter of law and must be dismissed.

### B. Ms. Congress Fails to Allege Facts to Support a Claim of Discrimination under the ADA (Count II).

In Count II, Ms. Congress purports to assert a claim of discrimination in violation of the ADA. To state a discrimination claim under the ADA, Ms. Congress must allege that (1) she has a disability, (2) she is a qualified individual, and (3) her employer took an adverse employment action against her because of her disability. *Sturgill v. Norfolk S. Ry. Co.*, 391 F. Supp. 3d 598, 603 (E.D. Va. 2019) (quoting *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997)). Ms. Congress fails to state a claim upon which relief can be granted because she fails to allege that she is a qualified individual with a disability and because she fails to allege any facts connecting her non-renewal to any disability.

#### 1. Ms. Congress Fails to Allege She is a Qualified Individual with a Disability, and Thus States No Claim under the ADA.

Ms. Congress does not state a claim under the ADA because she fails to allege that she is a qualified individual with a disability. Nowhere in the Complaint does she identify any physical or mental impairment that substantially limits one or more major life activities. Nor does she claim to have a record of such an impairment, or that Defendants regarded her as having one. *See* 42 U.S.C.A. § 12102(1); *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).

8

Plaintiff references absences due to COVID-19 and hospitalizations, including for high blood pressure, but she does not allege that any of these conditions substantially limited any major life activity. The Fourth Circuit requires a plaintiff to plead specifically what life activity is substantially limited to state a viable ADA claim. *See Adinolfi v. North Carolina DOJ*, 2023 U.S. App. LEXIS 3075, *5 (4th Cir. 2023). Because Ms. Congress does not identify any life activity limited by her COVID-19 infections or other health conditions, she cannot establish that she is a qualified individual with a disability.

Moreover, temporary medical conditions or isolated health incidents are insufficient to establish a disability. *See Heiko v. Colombo Sav. Bank*, F.S.B., 434 F.3d 249, 257 (4th Cir. 2006) ("[s]poradic or otherwise temporary impairments do not qualify as substantial limitations."); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) ("it is evident that the term 'disability' does not include temporary medical conditions.") Here, Ms. Congress's COVID-19 illness and short-term medical leave, standing alone, do not appear to meet the ADA's definition of disability. Absent any allegation that she has a disability as defined by the statute, her ADA claim fails as a matter of law.

### 2. Ms. Congress Fails to Allege Any Facts Showing That the Non-Renewal Occurred Because of a Disability.

Even assuming that Ms. Congress had adequately alleged a qualifying disability, her discrimination claim under the ADA still fails because the Complaint does not plausibly allege that her contract was not renewed because of any disability. To state a claim under the ADA, a plaintiff must allege facts showing that the adverse action was taken because of her disability. *See Sturgill*, 391 F. Supp. 3d at 603.

The Complaint alleges that Ms. Congress contracted COVID-19, experienced related health issues, and took approved medical leave. (Compl. ¶¶ 17–20.) It further alleges that ACPS informed her of the non-renewal. (Id. ¶ 21.) The Complaint then asserts, in conclusory fashion,

9

that Defendant "discriminated against Plaintiff based on perceived or actual health conditions" and "took adverse actions due to her medical absences." (Id. ¶ 34.) These allegations do not plausibly connect the non-renewal decision to any actual or perceived disability. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (In evaluating whether a claim is stated, the court does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement.")

Critically, the allegation that ACPS took adverse action "due to medical absences" does not state a claim under the ADA. The ADA prohibits discrimination *because of a disability*, not because an employee was absent from work for medical reasons. *See Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 214 (4th Cir. 1994). Absent factual allegations that the challenged action was taken because of an actual or perceived disability, as opposed to attendance or leave-related issues, this conclusory assertion fails to plead the causal connection required under the statute.

The Complaint does not allege that ACPS considered any disability in connection with the non-renewal decision, expressed concern about any allegedly disabling condition, or treated Ms. Congress adversely because of a physical or mental impairment. Nor does it allege facts supporting any inference that ACPS regarded Ms. Congress as having a substantially limiting condition, as opposed to experiencing a temporary illness requiring short-term leave, which it approved. Absent factual allegations linking the non-renewal to an actual or perceived disability—as distinct from Ms. Congress's medical leave or absences—the Complaint fails to state a plausible claim of disability discrimination under the ADA.

### 3. Ms. Congress Fails to State Any Claim of a Failure to Accommodate Any Disability.

Ms. Congress's ADA claim also fails to the extent it is premised on an alleged failure to accommodate. To state a failure-to-accommodate claim, Ms. Congress must allege that (1) she was an individual with a disability within the meaning of the statute; (2) the School Board had

10

notice of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) the School Board refused to make such accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

The Complaint does not allege that Ms. Congress requested any accommodation other than medical leave, which ACPS approved. (Compl. ¶ 19.) Where, as here, an employer grants the only accommodation requested, a plaintiff cannot plausibly allege that the employer refused to accommodate her disability. The ADA does not impose liability simply because an employee required leave; it requires a refusal to provide a reasonable accommodation. Because the Complaint affirmatively alleges that ACPS approved Ms. Congress's requested leave, it fails to plead the essential element of refusal necessary to sustain a failure-to-accommodate claim.

Moreover, it also is worth noting that Ms. Congress did not raise any failure-to-accommodate theory in her EEOC charge. Because a plaintiff must exhaust administrative remedies for each distinct ADA claim, any failure-to-accommodate claim also now would be barred. See *Keith v. Volvo Grp. N. Am., LLC*, 2024 U.S. App. LEXIS 6619, *7 (4th Cir. 2024).

### C.  Ms. Congress Fails to Plead a Constructive Discharge Claim (Count III).

Ms. Congress purports to assert a separate claim for "constructive discharge" in Count III of her Complaint, alleging "Defendant's conduct—coercion to resign, character defamation, and false allegations—constituted constructive discharge, violating Plaintiff's rights under federal law. As an initial matter, Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to identify the legal basis for her claim so that defendants have fair notice of the claim asserted and the grounds upon which it rests. Constructive discharge, however, is not an independent cause of action under federal law or Virginia law, but rather a theory of liability that must be tied to a specific statutory claim. See *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1232 (E.D. Va. 1996) (finding a claim for constructive discharge did not exist under Virginia law). Because Ms.

11

Congress does not identify any federal statute under which her constructive-discharge theory is brought, Defendants are left to guess whether she intends to proceed under Title VII, the ADA, the FMLA, or some other law. Count III therefore fails to satisfy Rule 8 and should be dismissed.

Furthermore, even if the Court were to construe Count III as asserting a constructive-discharge theory under an unidentified federal statute, the allegations still fail to state a claim. To state a claim based on constructive discharge, a plaintiff must allege that she was subjected to discriminatory conduct by her employer so intolerable that a reasonable person in her position would have felt compelled to resign, and that she in fact resigned. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019).

Ms. Congress's allegations do not meet this demanding standard. The Complaint relies only on conclusory assertions of coercion, character defamation, and false allegations, without alleging facts showing that these actions rendered Ms. Congress's working conditions objectively unbearable at the time of her resignation. *See Martin v. Stateside Assocs., Inc.*, 2025 U.S. Dist. LEXIS 126450, *13 (E.D. Va. July 1, 2025) (finding allegation that managers made demeaning remarks too vague and conclusory to support claim of constructive discharge); *Okebata v. Dep't of Def.*, 2022 U.S. Dist. LEXIS 158341, at *5 (E.D. Va. July 29, 2022) (finding "vague assertions about harassment and bullying . . . do not suffice to state a claim").

The Complaint does not allege that Ms. Congress was required to return to an intolerable workplace, that she was subjected to ongoing discriminatory harassment, or that resignation was her only reasonable option. The Complaint's only nonconclusory factual assertion is that, while she was on approved FMLA leave, ACPS informed Ms. Congress that her contract would not be renewed and advised her to resign to avoid a non-renewal notation. Such allegations, even if accepted as true, describe an employment decision, not objectively intolerable working conditions that would compel a reasonable employee to resign. *See Burke v. CHS Middle East,*

12

*LLC*, 2019 U.S. Dist. LEXIS 19189, *15-16 (E.D. Va. Feb. 4, 2019) ("Standing alone, an employer's decision not to rehire an employee for another year does not make the employee's working conditions objectively intolerable . . . since Defendant had already secured Plaintiff's soon termination by not renewing her contract, there is not a plausible inference that Defendant was attempting to compel Plaintiff's resignation"). Ms. Congress's allegations amount only to a disagreement with ACPS's employment decision and its handling of her departure, which is insufficient as a matter of law to plead constructive discharge.

Accordingly, even if Count III were construed as arising under Title VII, the ADA, or the FMLA, Ms. Congress has failed to allege facts plausibly establishing constructive discharge. Count III should therefore be dismissed for failure to state a claim.

## Conclusion

For the foregoing reasons, the Alexandria City School Board, which operates Defendant Alexandria Public Schools, and Defendants Dr. Melanie Kay-Wyatt, Kamika Valmond, Jeannette Vinson, and Heather Orenstein, by counsel, respectfully request that this Court dismiss the Complaint filed against them by Plaintiff Trina Yolonda Congress and award them such other and further relief as this Court deems appropriate.

> Respectfully submitted,
>
> ALEXANDRIA CITY SCHOOL BOARD for
> ALEXANDRIA CITY PUBLIC SCHOOLS,
> DR. MELANIE KAY-WYATT, KAMIKA
> VALMOND, JEANNETTE VINSON, &
> HEATHER ORENSTEIN
> By Counsel

Date:   December 31, 2025

BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)


By:   /s/ Dana Leinbach
      Laurie L. Kirkland, VSB No. 75320
        lkirkland@bklawva.com
      Dana Leinbach, VSB No. 95866
        dleinbach@bklawva.com
      *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of December 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, and I will mail a copy to:

>Trina Yolonda Congress
>3329 Teagarden Circle, Apt. 201
>Silver Spring, MD 20904
>(301) 755-3338
>trinacongress@aol.com
>*Pro se*

                              /s/  Dana Leinbach
                              Dana Leinbach, VSB No. 95866
                              BLANKINGSHIP & KEITH, P.C.
                              4020 University Drive, Suite 300
                              Fairfax, Virginia 22030
                              Phone: 703-691-1235
                              Fax: 703-691-3913
                              dleinbach@bklawva.com
                              *Counsel for Defendants*