IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TRINA YOLONDA CONGRESS,
*Plaintiff,*

v.

ALEXANDRIA CITY PUBLIC SCHOOLS,
*et al.,*
*Defendants.*

No. 1:25-cv-01880-MSN-IDD

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (ECF 9) *pro se* Plaintiff Trina Congress's Complaint (ECF 1, 1-2). Defendants' Motion has been fully briefed and is ripe for adjudication, and the Court dispenses with oral argument as it would not aid the decisional process. For the reasons stated below, the Court will grant Defendants' Motion in part and deny it in part.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Trina Congress served as a seventh-grade Special Education Teacher for the 2022-2023 and 2023-2024 school years at George Washington Middle School, which operates within the Alexandria City Public School System ("ACPS"). ECF 1-2 at 2. She alleges that, during her tenure, she "consistently received positive evaluations and praise for her teaching effectiveness" from supervisors, students, and parents. *Id.*

In late 2023, Plaintiff contracted COVID-19 at work and "later became ill again due to workplace exposure." ECF 1-2 at 3. These illnesses "required multiple hospital visits, including three emergency hospitalizations for high blood pressure." ECF 1-2 at 3. In April 2024, Plaintiff's

medical provider recommended she take medical leave. *Id.* ACPS approved Plaintiff's requests to take short-term disability leave and leave under the Family and Medical Leave Act ("FMLA"). *Id.* On May 20, 2024, Plaintiff received written confirmation of her approval for her short-term disability compensation; however, on the same day, a Human Resources ("HR") department representative "emailed Plaintiff stating that her contract would not be renewed and [that] she should resign immediately" to avoid any damage that a "'non-renewal' notation" in her employment file could cause to her career. *Id*. Plaintiff alleges that she was still on approved FMLA leave when she learned that her contract would not be renewed. *Id.* Plaintiff "felt compelled to resign" to protect her "future employment." *Id.* at 7.

### B. Procedural History

After resigning, Plaintiff filed a charge of discrimination under the Americans with Disabilities Act ("ADA") with the Equal Employment Opportunity Commission ("EEOC") against ACPS. ECF 1-2 at 1; *see also* ECF 18-1. After receiving notice of her right to sue, Plaintiff timely filed her Complaint in this action. ECF 1-1 at 1; 1-2 at 1.

Plaintiff brings this action against ACPS. ECF 1 at 2. She also names as Defendants Dr. Melanie Kay-Wyatt, the Superintendent of ACPS; Kamika Valmond, Executive Director of Human Resources; Jeanette Vinson, Principal at George Washington Middle School; and Heather Orenstein, of Human Resources (collectively, "Individual Defendants"). *Id*. Defendants now move to dismiss. ECF 9.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). For purposes of a 12(b)(6) motion, the "court must

accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). Courts must also construe *pro se* pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.    ANALYSIS

Plaintiff's Complaint brings claims under Title VII of the Civil Rights Act of 1964, the ADA, and the FMLA.[1] ECF 1-2 at 4. Specifically, the Complaint alleges that (1) "Defendant retaliated against Plaintiff for engaging in protected activities, including . . . taking protected medical leave, in violation of Title VII . . . and the FMLA," and (2) "Defendant discriminated against Plaintiff based on perceived or actual health conditions, failed to provide reasonable accommodations, and took adverse actions due to her medical absences, in violation of the ADA."[2] ECF 1-2 at 4.

---

[1] Plaintiff's Complaint also brings a claim for "constructive discharge." ECF 1-2 at 4. A constructive discharge occurs when an employer deliberately creates working conditions so "intolerable" that a reasonable person would be effectively forced to resign. *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citation omitted). Under these extreme circumstances, courts consider "the employee's resignation as though the employer actually fired [them]." *Id*. at 560. Notably, a constructive discharge claim "can satisfy the element of an adverse employment action in a substantive [employment discrimination] claim, but it does not constitute a claim by itself." *Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 576 (D. Md. 2013) (citation omitted). Because Plaintiff alleges other bases sufficient to constitute an affirmative adverse employment action (namely, being told that ACPS would not renew her contract), the Court need not decide whether she was constructively discharged for purposes of her discrimination and retaliation claims at this stage. *See infra*. Furthermore, because constructive discharge is not an independent legal claim, the Court will dismiss Count III of Plaintiff's Complaint. *See Williams v. Newport News Sch. Bd.*, No. 4:20-CV-41, 2021 WL 3674983, at *19 (E.D. Va. Aug. 19, 2021) (allowing a plaintiff the opportunity to assert retaliation based on a constructive discharge theory but dismissing her standalone constructive discharge claim).

[2] Plaintiff also mentions in her Complaint form, and again in her Opposition to Defendants' Motion to Dismiss, that she believes Defendant's actions violated the Equal Protection Clause of the Fourteenth Amendment. ECF 1 at 3; 14 at 1. To state an equal protection claim, a plaintiff must allege, among other things, "that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (citation omitted). Plaintiff has not alleged that she was treated differently than similarly situated coworkers without disabilities and therefore has not stated a claim under the Equal Protection Clause.

### A.    Claims Against Improper Parties

Defendants first argue that this Court ought to dismiss Plaintiff's action because the Individual Defendants she sues cannot be held liable for any alleged violations of Title VII, the ADA, or the FMLA and because "ACPS is not a legal entity capable of being sued." ECF 10 at 3. The Court agrees, but only in part.

### 1.    Individual Defendants

"Because Title VII does not provide for individual liability, [the Court] must grant the motion[] to dismiss brought against the individual defendants on this ground." *Rawls-Dolin v. Riverside Reg'l Jail*, No. 3:19-cv-740, 2020 WL 5753963, at *10 (E.D. Va. Sept. 25, 2020); *see also Bracey v. Buchanan*, 55 F. Supp 2d 416, 420 (E.D. Va. 1999) (explaining that the ADA, similarly, does not provide for individual liability).

The FMLA yields a different result. This Court has held that public employees "may be sued in their individual capacities for alleged violations of the FMLA," because public employees "fall[] within the FMLA's definition of employer" when they act "directly or indirectly, in the interest of [their] employer." *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 972-3 (E.D. Va. 2012). Plaintiff's claim against the Individual Defendants must still be dismissed, however, because Plaintiff has not made any allegations against them that could constitute the basis of a sufficient FMLA claim.

"Dismissal of a claim where the defendants are named only in the caption of a case is appropriate when the body of the complaint fails to include any specific allegations against the defendants." *Walter-Louis Gates v. Brock*, No. 7:25-cv-00492, 2026 WL 907710, at *3 n.5 (W.D. Va. Apr. 2, 2026) (citing *Harris v. City of Va. Beach*, 11 F. App'x 212, 214-15, 217 (4th Cir. 2001)). Here, Plaintiff mentions three of the Individual Defendants in the body of her Complaint

4

(Valmond, Vinson, and Kay-Wyatt) (ECF 1-2 at 2-8) but makes no allegations against them related to use of FMLA leave or any adverse action. As for Orenstein, Plaintiff only lists her as a Defendant.[3] ECF 1 at 2. Plaintiff's sparse pleadings are insufficient to state a claim for relief against the Individual Defendants and, accordingly, the Court will dismiss her claims against them. *See Iqbal*, 556 U.S. at 678 (requiring a complaint to demonstrate "more than a sheer possibility that a defendant has acted unlawfully").

### 2.    ACPS

With respect to her claims against ACPS, Defendants correctly note that Alexandria City Public Schools is neither an employer, nor a legal entity against which civil relief may be granted. ECF 10 at 5; *see also Cross v. Suffolk City Sch. Bd.*, No. 2:11-cv-88, 2011 WL 2838180, at *4 (E.D. Va. July 14, 2011) (explaining that, under Virginia law, only a school board and not the public school system can sue and be sued). Nevertheless, "[i]n the interest of judicial efficiency and in its inherent authority to manage its docket, a district court can issue an order *sua sponte* that substitutes the proper defendant in a case where Plaintiff is proceeding *pro se.*" *Kabando v. United States*, No. 1:15-cv-1040, 2015 WL 5052665, at *4 (E.D. Va. Aug. 26, 2015). Given the technicality of Plaintiff's pleading error, the Court will deny Defendants' Motion to Dismiss Plaintiff's claim against the School Board and will order the Clerk of Court to substitute the Alexandria City School Board as the proper Defendant.

---

[3] While Orenstein appears in some of the hundreds of emails that Plaintiff has attached to her Complaint, the Court will not "sift through the mass of [exhibits] to determine whether [she] has alleged a cognizable claim for relief." *Akerman v. Austin*, 1:22-cv-696, 2022 WL 16700382, at *12 (E.D. Va. Nov. 3, 2022).

### B.       Retaliation under Title VII

Turning to the merits, Plaintiff first argues that Defendants retaliated against her in violation of Title VII. ECF 1-2 at 4. The Court must dismiss Plaintiff's Title VII claim because she failed to exhaust her administrative remedies before filing suit.[4]

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)). "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit," and the "scope of any subsequent judicial complaint" she files is "generally limit[ed]" by the allegations contained in her administrative charge. *Mickens v. Serco, Inc.*, No. 1:24-cv-1014, 2025 WL 938620, at *6 (E.D. Va. Mar. 27, 2025) (internal quotation marks omitted); *see also Chacko v. Patuxnet Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge."). Insofar as a plaintiff's discrimination claim "exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (quoting *Chacko*, 429 F.3d at 509). "A claim will also typically be barred if the administrative charge alleges one type of discrimination . . . and the claim encompasses another type." *Id*. (quoting *Chacko*, 429 F.3d at 509).

Plaintiff's EEOC charge (ECF 18-1) does not reference any violation of Title VII, nor does it "contain factual allegations from which a Title VII claim could naturally arise." *Mickens*, 2025

---

[4] Defendant asserts that a plaintiff's failure to exhaust deprives this Court of subject matter jurisdiction. ECF 10 at 5-6. This is incorrect. The Supreme Court held that "Title VII's charge-filing instruction is not jurisdictional," but rather "must be timely raised to come into play." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543-44 (2019). Plaintiff's failure to exhaust her Title VII claim therefore does not strip this Court of subject matter jurisdiction; rather, it means that Plaintiff has failed to state a claim under Rule 12(b)(6).

WL 938620, at *6. In it, she asserts that she was "discriminated against on the basis of [her] disability and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act." ECF 18-1 at 1. Nowhere in her EEOC charge does she allege discrimination on the basis of "race, color, religion, sex, or national origin," *see* 42 U.S.C. § 2000e-2(a), or that she experienced retaliation for opposing such discrimination, *see* 42 U.S.C. § 2000e-3(a). The Court must therefore dismiss Plaintiff's Title VII retaliation claim.

### C.   ADA

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  Plaintiff asserts two claims under the ADA in her Complaint: (1) discrimination due to "perceived or actual health conditions" and (2) failure to provide reasonable accommodations for her disability. ECF 1-2 at 4. The Court will consider the merits of each claim because they were either "stated in the initial [EEOC] charge, . . . [or] reasonably related to the original complaint," and thus have been properly exhausted.[5] *Walton*, 33 F.4th at 172.

#### 1.   ADA Discrimination

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of

---

[5] In her EEOC Charge, Plaintiff alleges that she "was discriminated against on the basis of [her] disability and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act." ECF 18-1 at 1. She does not explicitly mention failure to accommodate, but she lists facts to suggest that she engaged in a back-and-forth process with her employer regarding proper accommodations. "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (internal quotation marks omitted). Construing her EEOC charge liberally, the Court finds that her reasonable accommodation claim does not "exceed the scope" of "any charges that would naturally have arisen from an investigation" of her EEOC complaint and thus the Court may consider her claim on the merits. *Chacko*, 429 F.3d at 509.

her disability." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (internal quotation marks omitted).

To show an adverse action, a plaintiff must demonstrate that she suffered "some disadvantageous change in an employment term or condition." *Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024)). Defendants do not dispute that Plaintiff suffered an actual adverse employment action when HR did not renew her contract. *See* ECF 10 at 8-10. "That [Plaintiff's] termination arose by way of non-renewal of an employment contract is of no consequence," for purposes of identifying whether she suffered an adverse action. *Ainsworth*, 851 F. Supp. 2d at 976; *see also Dixon v. Royal Live Oaks Acad. of Arts & Scis. Charter Sch.*, No. 9:22-cv-04198, 2025 WL 3150073, at *14 (D.S.C. Sept. 26, 2025) (collecting cases within the Fourth Circuit holding the "non-renewal of an educator's contract to be an adverse employment action").

Defendants also do not challenge whether Plaintiff is a "qualified individual for the employment in question," meaning that she was "performing her job at a level that met her employer's legitimate expectations" prior to her termination. *Jacobs*, 780 F.3d at 574. They do argue, however, that Plaintiff has not sufficiently alleged (1) that she was "disabled" under the ADA at the time of her injury, or (2) that the adverse employment action she suffered was causally connected to her disability. ECF 10 8-9, 10.

Beginning with the issue of whether Plaintiff has a qualifying disability under the ADA, Defendants argue that "temporary medical conditions . . . are insufficient to establish a disability.[6] ECF 10 at 11. The ADA defines "disability" as "a physical or mental impairment that substantially

---

[6] Most of the cases that Defendants rely on with respect to Plaintiff's ADA discrimination claims, *see* ECF 10 at 11, pre-date Congress' major amendment to the ADA in 2008, in which Congress "intended to liberalize the ADA" and expanded it to cover severe, short-term disabilities, *Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 330 (4th Cir. 2014); *see also* ADA Amendments Act, Pub. L. 110-325, § 2(a), 122 Stat. 3553 (2008).

limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); *see also id.* § 12102(4)(A) (directing that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter"). "Major life activities" include the ability to work. 42 U.S.C. § 12102(2)(A). An impairment that is "episodic" may still constitute a disability if it would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(D); *see also Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 333 (4th Cir. 2014) ("[A]n impairment is not categorically excluded from being a disability simply because it is temporary.").

A "disability" may take any of the following forms: (1) "a physical or mental impairment that substantially limits one or more major life activities" (the "actual-disability" prong); (2) "a record of such an impairment" (the "record-of" prong); or (3) "being regarded as having such an impairment" (the "regarded-as" prong). 42 U.S.C. § 12102(1).

Plaintiff alleges that she "contracted COVID-19 . . . and later became ill again." ECF 1-2 at 3. She asserts that "[t]hese illnesses required multiple hospital visits, including three emergency hospitalizations for high blood pressure" which ultimately led her medical provider to recommend she take short term disability leave. *Id*. The Court accepts Plaintiff's allegation that she suffered a medical condition which impacted her ability to work. 42 U.S.C. § 12102(2)(A). And, at the very least, she has adequately shown that Defendants *regarded* her as having a disability that made her unable to work as evidenced by their approval of her request to take short-term disability leave. *See Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (concluding that a *pro se* plaintiff adequately alleged that prison officials regarded him as disabled through their statement that persons with medical conditions such as the plaintiff's were ineligible for jobs). The Court thus concludes that Plaintiff has plausibly alleged that she is a person with a disability under the statute.

Plaintiff has also sufficiently alleged a causal connection between her disability and an adverse action. In order to prove causation in ADA discrimination cases, a plaintiff must sufficiently allege that her "disability was a 'but-for' cause" of an adverse action. *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024) (citing *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235-36 (4th Cir. 2016)).

Here, Plaintiff relies on the temporal proximity between when she disclosed her disability status to Defendant and when she was notified that her contract would not be renewed to demonstrate the requisite causation for her claim. ECF 1-2 at 4, 7. The Fourth Circuit has held that "[a] plaintiff must allege that the employer was motivated by [her] disability, not simply [her] protected action" to present an inference of discrimination. *Kelly*, 90 F.4th at 170. However, "it is well-established that 'close temporal proximity weighs heavily in favor of finding [an inference of] causation.'" *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 380 (4th Cir. 2022) (quoting *Jacobs*, 780 F.3d at 575). While the Fourth Circuit has not specified the length of time that can give rise to a causal connection, it has found that a roughly one-month gap between an employee engaging in protected activity and suffering an adverse action may be sufficiently narrow to raise an inference of ADA discrimination. *Jacobs*, 780 F.3d at 575 (three-week gap); *Cowgill*, 41 F.4th at 380-81 (same).

In her Complaint, Plaintiff indicates she disclosed her disability to her employer at some point in April 2024, when she requested and was approved to take short-term disability and FMLA leave. She was then notified of her contract status on May 20, 2024. ECF 1-2 at 3. Plaintiff notes that she was "still on approved FMLA leave . . . and had no performance issues pending" when she received the notice. ECF 1-2 at 3. At this stage, the roughly one-month gap between when Plaintiff requested disability-related leave and when the School Board decided not to renew her

10

contract gives rise to an inference that Plaintiff's contract was not renewed *because of* her disability. *See Jacobs*, 780 F.3d at 575. Plaintiff has thus adequately pled a claim of disability discrimination.

### 2. Failure to Accommodate

To allege a failure-to-accommodate under the ADA, a plaintiff must show that (1) she was disabled, (2) her employer had notice of her disability, (3) she could perform the essential functions of her position with a reasonable accommodation, and (4) the employer refused to make such an accommodation. *Cowgill*, 41 F.4th at 378.

Defendants dispute whether plaintiff has adequately shown that (1) she was disabled, and (2) the School Board refused to make an accommodation. As explained above, the Court concludes that Plaintiff has adequately alleged that she has a disability within the meaning of the statute. However, Plaintiff has not adequately alleged that Defendants denied her reasonable accommodations.

Plaintiff's Complaint explains that she was granted each of the accommodations—FMLA and short-term disability leave—that she requested. ECF 1-2 at 3. To be fair, it appears that Plaintiff was not able to finish taking leave because Defendants did not renew her contract and she resigned from the position. But Plaintiff has not shown that Defendants refused to make any of the accommodations she requested and therefore has not stated a claim for failure to accommodate.

### D. FMLA Retaliation

Finally, Plaintiff alleges that Defendants retaliated against her in violation of the FMLA for refusing to renew her contract after she took FMLA leave. ECF 1-2 at 4.

To state an FMLA retaliation claim, "a plaintiff must establish that: (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the

adverse employment action was causally connected to the plaintiff's protected activity." *Ainsworth*, 851 F. Supp. 2d at 976. "A plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss," *Lloyd v. Baltimore Police Dep't*, No. 23-cv-1987, 2024 WL 4264902, at \*4 (D. Md. Sept. 23, 2024) (internal quotation marks omitted).

Plaintiff engaged in a protected activity under the FMLA by requesting and taking approved leave. 29 U.S.C. § 2615(a)(1); *Yashenko v. Harra's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). As discussed above, she experienced an adverse action when, while still on FMLA leave, ACPS decided not to renew her contract.

At the motion to dismiss stage, "close temporal proximity" between the protected activity and an employer's adverse action "may suffice to demonstrate causation." *Mickens*, 2025 WL 938620, at \*5 (quoting *Waag v. Sotera Def. Sols, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017)). "Although timing evidence 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" *McPherson v. Emp. Source, Inc.*, No. 5:23-cv-345, 2026 WL 917514, at \*15 (E.D.N.C. Mar. 31, 2026) (quoting *Yashenko*, 446 F.3d at 551). Courts in the Fourth Circuit have found sufficiently tight temporal proximity when a plaintiff suffers an adverse action while taking FMLA leave, or a few weeks after they return. *Waag*, 857 F.3d at 183, 192 (holding that plaintiff showed "close temporal proximity" when he was terminated "less than six weeks" after returning from leave); *Yashenko*, 446 F.3d at 545, 551 (inferring causation when defendant told plaintiff it planned to eliminate his position while he was on leave and discharged him "upon his return"); *McPherson*, 2026 WL 917514, at \*16 (same when plaintiff was demoted four days after returning from FMLA leave).

Plaintiff states in her Complaint that Defendants approved her request to take FMLA leave in April 2024 and her disability compensation was approved on May 20, 2024. ECF 1-2 at 3. Later

12

that day (May 20, 2024), a representative from HR "emailed Plaintiff stating that her contract would not be renewed and she should resign immediately," while she was still on approved FMLA leave. *Id*. The absolute lack of temporal gap between Plaintiff engaging in a protected activity— using FMLA leave—and suffering an adverse action is "more than sufficient to show a causal connection" at the motion to dismiss stage. *Twine*, 755 F. Supp. 3d at 984-85. The Court thus finds that Plaintiff has sufficiently stated a claim for FMLA retaliation and will deny Defendants' Motion to Dismiss (ECF 9) with respect to this claim.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss (ECF 9) is GRANTED IN PART and DENIED IN PART; it is further

ORDERED that Defendants' Motion to Dismiss (ECF 9) is GRANTED with respect to all claims against Defendants Dr. Melanie Kay-Wyatt, Kamika Valmond, Jeanette Vinson, Heather Orenstein, and ACPS. The Motion is further GRANTED as to the portion of Count I alleging retaliation under Title VII, the portion of Count II asserting failure to accommodate under the ADA, and Count III. The Motion is DENIED as to the portion of Count I alleging retaliation under the FMLA and the portion of Count II alleging discrimination under the ADA; it is further

ORDERED that Plaintiff's Title VII claim in Count I, her failure to accommodate claim in Count II, and Count III are DISMISSED; it is further

ORDERED that Plaintiff's claims in Counts I-III against Defendants ACPS, Dr. Melanie Kay-Wyatt, Kamika Valmond, Jeanette Vinson, and Heather Orenstein are DISMISSED; it is further

ORDERED that Alexandria City School Board be substituted as the proper Defendant.

13

The Clerk is directed to substitute Alexandria City School Board as the proper defendant and send a copy of this Memorandum Opinion and Order to counsel of record and to Plaintiff Trina Yolanda Congress, *pro se*.

IT IS SO ORDERED.

/s/
_____
Michael S. Nachmanoff
United States District Judge

July 17, 2026
Alexandria, Virginia

14